HENRY R. STOUDT v. ELISHA SHEPHERD, JR.

*Seduction—Action by father—Damages.*

1. In this case a father recovered a judgment of $20 for the seduction of his minor daughter, which was the exact amount of certain money expenses, and secured a reversal of the judgment for reasons stated in the opinion.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL, which was concurred in by SHERWOOD, C. J.:

   *a*—"Seduction" and "debauching" are in civil causes very generally used as substantially similar terms, and we do not think it important which word is used in the pleadings. The statutory and other rules applicable to the action, nominally based on loss of service under the old fictions, are the rules that must govern in all of these cases.

*b*—Full liberty of explanation should always be given to witnesses. No one can be expected to remember with literal exactness or entire fullness what he or she has testified years before.

*c*—No question is leading which does not suggest an answer, and that over-technicality in obstructing testimony, by objecting to questions which have no reasonable tendency to do mischief, is not desirable, or calculated to expedite trials or develop truth.

*d*—Our statutes have removed from actions for seduction all the rubbish that disfigured them, from attempting to keep up an idea that their object was to collect damages for loss of service, when in fact that was never any more than a legal fiction.

*e*—The jury could not possibly find a verdict for expenses actually incurred, and not for other damages, to some extent, at least.

*f*—No juror should find a verdict that is not based on his own convictions, derived from the whole case.

*g*—Our statutes (How. Stat. §§ 7779–7781) were passed to do away with the absurd doctrines arising out of the relations of service, and to redress the wrong as it really affects both the character and prospects of the woman, and the peace and comfort of the family. There may be possible cases where the elements of incapacity to labor, and of expenses incurred in treatment, may become considerable elements of damage; but they are usually very small factors in the result.

*h*—In *Watson v. Watson*, 49 Mich. 540, 53 Id. 168; *Dalman v. Koning*, 54 Id. 320, and *Weiher v. Meyersham*, 50 Id. 602,— it was held that a woman when of age, whether of age or not when debauched, could sue in her own name for the injury, and these cases also exploded the doctrine that a woman's consent to her own dishonor estopped her from recovery.

*i*—Seduction may be accomplished by means of influence and persuasion intended to reach, and actually reaching, the result, which do not necessarily involve either a promise of marriage or pecuniary advantage, and such effectual persuasion which is the active cause of it may be as distinct a grievance as the more venal representations, which appeal to covetousness more than to excited feeling.

*j*—In the case of *Dalman v. Koning*, 54 Mich. 320, it was held that, as the unlawful intercourse was the ground of action, the use of force did not negative the legal idea of seduction, and that a recovery could be had for *all* the wrong and its consequences.

*k*—Six years is the statutory period of limitation in these

cases, and is therefore, instead of any shorter period, the period within which facts alleged or proven must be shown.

*l*—Single acts in such affairs seldom make up alone the real transaction, and all that preceded them in the, mutual relations of the parties is to be considered with them.

3. MORSE and LONG, JJ., concurred in the result, and CHAMPLIN, J., did not sit.

Error to Eaton. (Hooker, J.) Argued January 23, 1889. Decided February 1, 1889.

Case for seduction. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*D. P. Sagendorph,* for appellant.

*E. A. Foot* (*Philip T. Van Zile,* of counsel), for defendant.

CAMPBELL, J. This suit, which was begun in 1880, when defendant was a minor, was brought to recover damages for the seduction of plaintiff's daughter Emma, who was also a minor. On a first trial plaintiff recovered over $3,000. A second trial granted by the circuit court of Eaton county reached no result. A third trial resulted in a verdict of $20, which was the exact amount of certain money expenses. Plantiff brings error, alleging several grounds, some of which relate to rulings on testimony, and the rest to the various ways in which it is claimed the court below subjected plaintiff to improper rulings and theories. The facts are not all set forth, and it was not necessary they should be. So far as necessary to decision, they seem to have, on one side or the other, been presented under this state of things: In December, 1879, Emma Stoudt gave birth to a child of whom the jury found defendant to be father, the result of a pregnancy brought about by intercourse in the end of March, 1879. This is fixed by the verdict. At the time of this

intercourse Emma was a child of less than 15 years, and defendant was also a minor considerably under majority, but precisely how much does not appear. There seems to have been testimony, as we learn from the charge and rulings, that the criminal intimacy had been going on for some time before the act of intercourse before referred to, and this appears to be admitted. There seems also to have been some testimony, but just what does not appear, connecting Emma with other persons. The court told the jury that there was nothing to implicate plaintiff in connivance or fault concerning his daughter, and the jury must have so found.

The declaration was in the old form, averring the criminal act as of March 30, 1879, and the subsequent pregnancy and child birth, and setting up loss of services and other injuries consequent. It is chiefly in consequence of the view taken by the circuit judge of the nature of the action, and the purpose and extent of the remedy, that the controversy was made to turn on that subject in this Court as well as below, where it is complained the case was treated as substantially one relating to expense and pecuniary loss.

Before referring to the issues before us, it is proper to refer to some argument that was made on a supposed distinction between seduction and debauching as grounds of action. We do not find any authority for such a distinct classification. There are some questions arising out of differences in criminal statutes, and there may be in civil causes, especially where the woman is an adult, some questions of conduct which will bear on damages or liability. But "seduction" and "debauching" are in civil causes very generally used as substantially similar terms. The term "debauching" is used by Chitty in his forms as the proper word for such misconduct with a servant or member of a family as gives ground of

action. We do not think it important which word is used in the pleadings. The statutory and other rules applicable to the action, nominally based on loss of service under the old fictions, are the rules that must govern in all of these cases.

Some of the allegations of error seem to relate to supposed prevention of the witness Emma Stoudt from explaining alleged discrepancies in her testimony on former occasions. The record does not show plainly what difficulty arose. It is therefore only necessary to say that full liberty of explanation should always be given to witnesses. No one can be expected to remember with·literal exactness or entire fullness what he or she has testified years before. The minutes of stenographers as well as of counsel are not always accurate. No witness should be debarred from such explanation or statements concerning former testimony or its circumstances as the witness may deem important. It is all done before the jury, and its candor and reasonableness will usually be appreciable. And in the same connection it is proper to suggest that no question is leading which does not suggest an answer, and that over-technicality in obstructing testimony, by objecting to questions which have no reasonable tendency to do mischief, is not desirable, or calculated to expedite trials or develop truth.

The chief difficulty complained of is the theory on which the court proceeded upon the trial. It does not seem to have been noticed that our statutes have removed from such actions all the rubbish that disfigured them, from attempting to keep up an idea that their object was to collect damages for loss of service, when in fact that was never any more than a legal fiction. Although by the common law it was rigidly required that the plaintiff should show a right to service and a relation of legal obedience, yet when that was shown in case of a child,

or even of another dependent the substantial and real damage was always held to arise from the shame and annoyance or suffering brought upon the household by the disgrace of one of its members. According to the best authorities, no necessity existed for showing the birth of offspring or any substantial loss of service. It was necessary while that fiction prevailed to show what might be by some effect of .imagination made to appear as an interference with the usefulness of the person debauched, but the slightest showing of the slightest actual loss on this score made it competent to recover such damages as were suitable to make reparation for the only serious mischief, which had practically nothing to connect it with any real loss of service. The labored efforts of courts to work out theories under which loss of service could be made out were only made reasonable by the unreasonable fiction which, in order to recover damages for a real injury, made it necessary to rely on an unreal one.

The charge was long, and some remarks may possibly have been qualified by others. But there were several charges given which put the case on a theory not recognized by our decisions, or by the statutes, and the finding of the jury cannot be reconciled with any proper theory. They could not possibly find a verdict for expenses actually incurred, and not for other damages, to some extent, at least. The court began by telling the jury that a woman herself could have no cause of action for seduction alone, consented to, and could only sue for such injuries caused by fraud or breach of promise; and, further, that the parent could not recover for the child's sexual intercourse, except from the relation of services, and that such action belonged to the employer, whoever he was; that, if the intercourse resulted in no injury to the master, there could be no recovery. The court told the jury there was no evidence tending to hold the

father guilty of any conduct which would forfeit any right of action. The nature of the injury, as incapacitating for labor, was dwelt upon considerably, and with it the idea that chastity or unchastity stood alike in regard to the existence of a right of action for lost labor. Language followed at some interval confining the right of action to what occurred on March 30, and holding the previous relations only important in leading to the probability of that occurrence. At a subsequent stage of the charge, after stating that the whole cause of action was for loss of services, reference was made to the rule that in some cases more might be given than the actual damages for the value of the services, with this suggestion:

" This may not strike us as being very reasonable, but it is the law, and we shall have to follow it. I mean that it may strike us that it is not very sensible to give damages in a suit when we can only measure damages by reason of loss of service; but, as I say, we have nothing to do with the question of whether the law is sensible or not, particularly, but merely enforce it as we find it."

What was said subsequently concerning the things to be considered in determining the extra damages we do not think it necessary to dwell upon critically because in the light of what had already been said, it is evident the jury paid no attention to it. They found that there was no appreciable loss of services, and gave no damages beyond the $20 which were paid out as expenses of confinement, and must have thought this precluded any greater recovery. There were some remarks in the close of the charge which strongly tended to censure jurors who do not yield to the majority, and they certainly bear that construction. No juror should find a verdict that is not based on his own convictions, derived from the whole case.

Our statutes were passed to do away entirely with the

absurd doctrines arising out of the relations of service, and to redress the wrong as it really affects both the character and prospects of the woman, and the peace and comfort of the family. There may be possible cases where the elements of incapacity to labor, and of expenses incurred in treatment, may become considerable elements of damage. But they are usually very small factors in the result.

Our statutes (sections 7779–7781, How. Stat.) cover the whole ground. Section 7779 declares that it shall not be necessary to aver or to prove any loss of service, although section 7781 allows any one who has actually lost services to recover for them. By section 7779 the action is allowed to be brought in case of a minor by either parent or by a guardian. In case of an adult female, it may be brought by the father or any other relative authorized by her in writing. By section 7780 it is provided that it shall not be necessary to prove that the person seduced was servant of the plaintiff. Nothing need be proved but the parental or other relation by nature or wardship.

Since those statutes, which have been in existence in the same language for more than 40 years, the whole theory of the law has been that the actionable injury was what under the common law had been tacitly conceded, and that the damages were those which had before been allowed only by way of aggravation. This has been recognized by decision here, and the statute has been construed according to its evident design, of abolishing the legal fiction, and furnishing adequate redress for the substantial wrong, and not on any pecuniary standard of service values.

In *Watson v. Watson*, 49 Mich. 540 (14 N. W. Rep. 489), 53 Id. 168 (18 N. W. Rep. 605); and *Dalman v. Koning*, 54 Id. 320 (20 N. W. Rep. 61); and in *Weiher*

*v. Meyersham,* 50 Id. 602 (16 N. W. Rep. 160),—it was held that a woman when of age, whether of age or not when debauched, could sue in her own name for the injury, and that the only reason for requiring any one else to sue formerly was that when the statutes were passed no party to the record could be a witness, although interest did not disqualify witnesses. As soon as parties were allowed to testify in their own behalf, the reason for requiring a nominal representative plaintiff no longer existed, and the real party injured was allowed to recover. Those cases also exploded the doctrine referred to by the judge below in his charge that a woman's consent to her own dishonor estopped her from recovery. This Court recognized, what we conceive to be the recognized doctrine of experience, that seduction may be accomplished by means of influence and persuasion intended to reach, and actually reaching, the result, which do not necessarily involve either a promise of marriage or pecuniary advantage; and that such effectual persuasion which is the active cause of it may be as distinct a grievance as the more venal representations, which appeal to covetousness more than to excited feeling.

The case of *Watson v. Watson* involved all of these considerations. The girl, when first led astray, was seduced by her adopted parent, who under the old theory was entitled to her labor. She yielded to the wiles and influences of the intimate domestic relationship wrongfully perverted, and not to selfish inducements. She sued, after reaching age, in her own name, and was allowed to prove the long series of relations as practically one continued transaction, and as ground of damages. These principles are all denied by the judge's charge in this case, which based the right of recovery upon services impaired, and confined the damages to what ensued from the one final act of intercourse which led to pregnancy.

The case of *Dalman v. Koning*, 54 Mich. 320 (in this respect following *Johnston v. Disbrow*, 47 Id. 59 (10 N. W. Rep. 79), held that, as the unlawful intercourse was the ground of action, the use of force did not negative the legal idea of seduction, and a recovery could be had for all the wrong and its consequences. It had been already held in *Watson v. Watson*, 49 Mich. 540, that two counts, one involving an assault and the other enticement, were not inconsistent with the same statutory theory, and did not make a double charge. In *Watson v. Watson*, 53 Mich. 168, it was pointed out, what seems to have been misunderstood on the argument in this Court, and perhaps below, that six years is the statutory period of limitation in these cases, and is therefore, instead of any shorter period, the period within which facts alleged or proven must be shown. In *Dalman v. Koning*, above cited, it was ruled that in cases of this sort no metaphysical or strained reasoning should be allowed to prevent the real damages from being enforced.

The decisions have also recognized, as those cases did, that single acts in such affairs seldom make up alone the real transaction, and that all that preceded them in the mutual relations of the parties is to be considered with them. Even in criminal cases, which usually are confined to single acts, previous relations may be important as explanatory. See, upon the general subject, *People v. Millspaugh*, 11 Mich. 278; *Threadgool v. Litogot*, 22 Id. 271; *Sheanan v. Barry*, 27 Id. 217; *People v. Brewer*, Id. 134; *Lewis v. People*, 37 Id. 518.

The last-named case has some bearing on the present case, as referring to young girls as more easily deceived or influenced by less inducements, in some cases, than older ones; and *Lewis v. People* is also important, in holding that testimony of subsequent lapses cannot be received to

show bad character at the time of the grievance, or in any way to bear upon it.

The youthfulness of defendant would be a circumstance which might or might not have a mitigating effect on damages, according to the other circumstances bearing on his character and surroundings. The youthfulness of Emma, who was no more than a child, and considerably under the age of consent to marriage, is also a very important element, in many ways, as bearing on her liability to temptation and other matters of common-sense experience. If her unchastity was first occasioned by intercourse with defendant, the fact that she continued to meet his advances would not affect his responsibility for the general result; and even if she yielded after that to others, upon which the silence of the record gives us no means of judging, the authorities and reason both indicate that the first lapse would render her more likely to be drawn away thereafter, and this was recognized in *Lewis v. People* as a reason why subsequent unchastity should not be shown in mitigation. The charge of the court below, resting always on the one general theory abolished by our statutes, referred to unchaste conduct with defendant as well as with others, previous to March 30, 1879, as a somewhat controlling element in some features of the case, without reference in any clear way to how far defendant himself was responsible for it. From the fact that these young people had been together from early childhood, it can hardly be assumed from the record that misconduct with others preceded misconduct with defendant. If it had done so, it would have weight in mitigation of damages, but it would not be a complete answer to the action. There was testimony indicating clearly that defendant was at various times active in enticing Emma from her

father's house, and the testimony referred to in the bill of exceptions, which, however, is not a full report, does not give any instance of her beginning the mischief herself. All of the facts should have been allowed their legitimate weight in determining the damages, and it would be impossible and unwise to attempt to guess at or define all the varying circumstances which occasion and sentiment might bring about. Of course, a father is not so much injured by the misconduct of a naturally bad girl as by that of a good one, and a person who has illicit dealings for the first time with a girl already depraved, and is not the cause of her fall, does not accomplish the same degree of wrong as in other cases. But there is no rule which holds legally free from accountability to some extent any person who interferes with the peace of a household by indulging in wrong conduct with one of its minor inmates, even if she is a participant in the wrong. The scandal and the suffering may be great, even in such a case, and the home of a wayward girl is at least some restraint upon her if she is let alone. Each case must be judged by its own facts. But a father who has not himself encouraged or aided in what has led to the dishonor of his daughter cannot be held entitled to no redress. An abandoned girl who is herself the active seducer of a young person stands in a very different condition.

As already stated, the radically wrong theory which pervades the case has led to all the rulings complained of, and to the practical denial of redress by the jury.

The judgment should be reversed, and a new trial granted.

SHERWOOD, C. J., concurred.

MORSE and LONG, JJ., concurred in the result.

CHAMPLIN, J., did not sit.