*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAMAR WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
April 23, 2020

No. 342893
Wayne Circuit Court
LC No. 17-005934-01-FH

Before: M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions for felon in possession of a firearm (felon-in-possession), MCL 750.224f, possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b(2), assault with a dangerous weapon (felonious assault), MCL 750.82, and aggravated domestic violence, MCL 750.81a(2). He was sentenced as an habitual offender, third offense, MCL 769.11, to 2 to 10 years' imprisonment for the felon-in-possession conviction, five years' imprisonment for the felony-firearms second-offense conviction, 2 to 5 years' imprisonment for the felonious assault conviction, and time served for the aggravated domestic violence conviction. Finding no errors warranting reversal, we affirm defendant's convictions, but remand for articulation of the reasons for the sentence and any resentencing, if deemed necessary.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In October 2017, the parties appeared for a jury trial. However, defendant formally waived his right to a jury trial. Both the prosecutor and defense counsel waived opening statements. The trial court announced that the bench trial would continue in December. At the continued trial date, defense counsel stated on the record that defendant advised of a possible alibi defense at the last court appearance and was instructed to provide necessary information to allow counsel to file a notice of alibi. Because of "personal tragedies," defendant never gave the information to his counsel. However, defendant's father, Kenneth Holder, appeared at the continued trial in December 2017, asserting that he could serve as an alibi witness. The prosecutor objected to the

late notice, and the trial court denied the request to present Holder as an alibi witness for noncompliance with the notice provisions.

The victim testified that her relationship with defendant became strained after the couple learned that she was pregnant and defendant was not the father. Despite ending the relationship, she testified that the couple partied with friends and family on April 22, 2017, then spent the night at a hotel. The next morning, the victim expected that defendant was going to drop her off for a hair appointment, but he wanted her to run errands with him. As they travelled in defendant's car, the victim requested that defendant let her out of the vehicle. Defendant pulled the car over and attempted to push the victim out of the car. The victim testified that they both fell out of the car with defendant on top of her. She struggled to get away from him and tried to get help from the neighborhood residents, but no one answered the door. The victim testified that defendant struck her with his fist as well as pistol-whipped her with a gun that he always carried. She also asserted that defendant ultimately drove off with her hand stuck in the window of the vehicle. He drove in such a manner it caused her to "fly" onto the hood of the vehicle, and defendant swerved to knock her off the vehicle and ran her over.

An eyewitness drove by and saw defendant[1] and the victim seemingly running around a black Mitsubishi. The defendant leaned over the car, and the victim appeared to duck away from him, but the eyewitness was unsure if there was something in defendant's hand. The eyewitness decided to return to the area to check on the victim. She saw defendant drive away and found the victim crying and bleeding. There was a cut above her eye. The eyewitness called 911, and they waited for the police and an ambulance to arrive. After the 911 call was played for the trial court, the eyewitness clarified that although she mentioned that the victim was pistol-whipped, the eyewitness did not personally observe its occurrence.

Defendant testified that he began a relationship with the victim in January of 2017, but learned in February 2017, that she was pregnant with another man's baby. Although the couple broke up, defendant testified that the victim continued to contact him, threatened to have her family and friends harm him, threatened to report him to the police and sabotage his parole hearing, and sent "crazy texts." Defendant claimed that he ended his relationship with the victim and had not seen her since March 2017. He denied partying with her, going to a hotel with her, and assaulting her. Rather, defendant claimed that his red Mitsubishi was in need of repair, and he took the vehicle to the apartment complex where Holder, a mechanic, lived to fix the car. At the conclusion of his testimony, the trial court convicted defendant of all offenses except the offense pertaining to the assault with the vehicle for running over the victim.

---

[1] The eyewitness testified that she saw a man and the victim running around the vehicle, and she was unable to identify the man. The victim's testimony provided the foundation that defendant was the man involved in the altercation.

Defendant filed a claim of appeal, and this Court granted his motion to remand to conduct a *Ginther*[2] hearing.[3] At the hearing, defendant's trial counsel, Richard Glanda testified that he instructed defendant to provide the name and address of his alibi witness to fulfill the notice requirements, but defendant did not comply. On the contrary, defendant and Holder testified that they advised defense counsel that the men were working on repairing defendant's vehicle at the time the assault occurred. They faulted defense counsel for failing to timely file the notice. However, there were inconsistencies in their testimony, including the color of the vehicle, and a lack of specific information. At the commencement of Holder's testimony, he complained that his chest hurt and that he was sick. The trial court gave him a break to compose himself. Holder was unable to provide his specific address and telephone number. Ultimately, the trial court found that Holder's testimony was not credible, cited to the "independent" testimony of the eyewitness, and did not find that defense counsel was ineffective. The parties agreed that defendant was entitled to resentencing. However, despite lowering the sentencing guideline range when rescoring the offense variables (OV), the trial court imposed the same sentence.

## II. APPELLATE BRIEF

### A. INEFFECTIVE ASSISTANCE – ALIBI DEFENSE

Defendant first alleges that trial counsel was ineffective for failing to investigate and file a notice of an alibi defense. We disagree.

The appellate court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Edwards*, 328 Mich App 29, 34; 935 NW2d 419 (2019). "Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

The purpose of alibi notice provisions is to prevent the surprise introduction of an alibi defense. *People v Travis*, 443 Mich 668, 675-676; 505 NW2d 563 (1993). MCL 768.20 addresses the alibi defense and states in pertinent part:

> (1) If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[3] *People v Williams*, unpublished order of the Court of Appeals, entered January 23, 2019 (Docket No. 342893).

specific information as to the place at which the accused claims to have been at the time of the alleged offense.

After the defendant provides his notice, MCL 768.20(1), the prosecutor shall file and serve upon the defendant a notice of rebuttal witnesses to controvert the alibi defense, MCL 768.20(2). Thereafter, both parties have a continuing duty to disclose names of additional witnesses and demonstrate why a witness was previously unavailable despite the exercise of due diligence, MCL 768.20(3).

MCL 768.21 addresses the effect of the failure to file the alibi or an insanity defense:

(1) If the defendant fails to file and serve the written notice prescribed in section 20 or 20a, the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi or the insanity of the defendant. If the notice given by the defendant does not state, as particularly as is known to the defendant or the defendant's attorney, the name of a witness to be called in behalf of the defendant to establish a defense specified in section 20 or 20a, the court shall exclude the testimony of a witness which is offered by the defendant for the purpose of establishing that defense. [Footnote of citation omitted].

If the defendant fails to file and serve the notice required by MCL 768.20, "the trial court is required to exclude evidence offered by the defendant for the purpose of establishing an alibi." *People v Seals*, 285 Mich App 1, 20; 776 NW2d 314 (2009). When defense counsel fails to file the requisite notice of alibi identifying the defendant's proposed witnesses, he is precluded from calling them to testify at trial. *Id.*

In light of trial counsel's failure to file a timely notice of alibi defense, the trial court properly excluded the defense. *Id.* The question becomes whether the failure to timely file the notice constituted ineffective assistance of counsel.

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016). To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

"[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). However,

counsel may be found ineffective for the strategy employed when it is not a sound or reasonable strategy. *People v Dalesandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988).

The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The trial court's factual findings are reviewed for clear error. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008). However, regard shall be given to the special opportunity of the trial court to assess the credibility of the witnesses that appeared before it, and those credibility determinations are also reviewed for clear error. *Id*. at 130. A finding is clearly erroneous if, although there is evidence to sustain it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id*.

In the present case, after the *Ginther* hearing, the trial court found that the testimony by Holder would not have created reasonable doubt or caused the court to rule differently. In reaching this conclusion, the trial court noted that there were inconsistencies between the testimony by Holder and defendant and further cited to Holder's demeanor. The trial court noted that Holder was unable to sit the entire time, he was anxious, he had to compose himself, and he had to leave the courtroom. Moreover, the trial court seemingly adopted defense counsel's version of events. Specifically, although defendant discussed having a possible alibi witness, he did not provide the address and phone number. Additionally, the trial court cited to the testimony from the eyewitness. She saw the victim and a man running around a car, and the victim ducked down as the man reached over the car, seemingly finding circumstantial evidence that defendant tried to shoot at the victim.

Under the circumstances, defendant failed to meet his factual predicate for a claim of ineffective assistance of counsel. *Hoag*, 460 Mich at 6. In light of the record, it cannot be concluded that the trial court's factual findings and assessment of witness credibility were clearly erroneous. *Dendel*, 481 Mich at 124.

Additionally, to obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Vaughn*, 491 Mich at 669. Defense counsel contends that trial counsel was ineffective because, while defendant broached the subject of an alibi, if he failed to follow through with the name and contact information, it was incumbent on trial counsel to contact defendant for the information. However, Holder testified that he advised trial counsel that he would like to testify that defendant was with him repairing a vehicle at the time of the incident. Holder relayed that trial counsel told him, "it wouldn't be wise to get on the stand" and "it wouldn't be in the best interest for [Holder]." When pressed by the trial court regarding what defense counsel's statement meant, Holder guessed that he was "trying to figure something else."

"While a defendant may have the constitutional right to the effective assistance of counsel, this does not encompass the right to assistance of counsel in committing perjury. In fact, an attorney's refusal to knowingly assist in the presentation of perjured testimony is not only consistent with his ethical obligations, but cannot be the basis of a claim of ineffective assistance of counsel." *People v Toma*, 462 Mich 281, 303 n 16; 613 NW2d 694 (2000). Thus, a defense counsel's failure to obtain details of defendant's story before trial may be the only manner for

counsel to aid defendant in the presentation of his theory "within counsel's ethical obligation not to knowingly offer evidence that counsel knows to be false." *Id*.

Although the trial court found that Holder's version was not credible, the testimony cited by Holder and the court's ultimate holding indicates that defense counsel acted in a manner designed to present defendant's theory while abiding by his ethical obligation addressing the presentation of evidence. In light of the record, we cannot conclude that the trial court erred in its holding that trial counsel's performance did not fall below an objective standard of reasonableness and that the result of the proceeding would not have been different.[4] This claim of error does not entitle defendant to appellate relief.

## B. GREAT WEIGHT OF THE EVIDENCE

Next, defendant contends that the verdict was contrary to the great weight of the evidence. We disagree.

"An appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). To determine whether a verdict is against the great weight of the evidence, the appellate court must examine the whole body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018).

> Generally, a verdict may only be vacated when the verdict is not reasonably supported by the evidence, but rather it "is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." Questions regarding credibility are not sufficient grounds for relief *unless* the "testimony contradicts indisputable facts or laws," the "testimony is patently incredible or defies physical realities," the testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror," or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." [*People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (Citations omitted, emphasis in original).]

Issues of credibility are for the trier of fact to resolve, and the appellate court does not interfere with those credibility determinations by resolving them anew. *People v Davis*, 241 Mich App 697,

---

[4] Although appellate counsel faulted the trial court for stating that the evidence did not alter the outcome when it should have examined the impact on a reasonable juror, the trial court in this case acted as the trier of fact because it was a bench trial.

700; 617 NW2d 381 (2000). The trier of fact has the right to disregard all, part, or none of the testimony of a witness. See *People v Goodchild*, 68 Mich App 226, 235; 242 NW2d 465 (1976).

Although defendant contends that the verdict was contrary to the great weight of the evidence, he does not contest a specific element of the convicted offenses. Rather, he challenges the credibility of the victim and the lack of eyewitness corroboration that defendant committed the assault upon her. Specifically, defendant contends that the victim was "patently incredible," her testimony defied "physical realities," the trial court discredited her testimony that she flew on top of the car, and the text messages demonstrated that her allegations were raised as revenge against defendant for the breakup.

However, the test to determine whether the verdict is against the great weight of the evidence is "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Anderson*, 322 Mich App at 632. The trier of fact is responsible for resolving issues of credibility, this Court does not interfere with that determination, and the trier of fact may disregard all, part, or none of the testimony from a witness. *Davis*, 241 Mich App at 700; *Goodchild*, 68 Mich App at 235. A verdict cannot be deemed against the great weight of the evidence premised on the party that produced the greater number of witnesses, but rather, the credibility and quality of the testimony presents an issue for the trier of fact. *People v Morlock*, 233 Mich 284, 287; 206 NW 538 (1925). It is well settled that the eyewitness testimony is sufficient to prove the commission of a crime beyond a reasonable doubt. See *People v Thomas*, 7 Mich App 103, 104; 151 NW2d 186 (1967).

We conclude that the verdict was not contrary to the great weight of the evidence. Although there was no eyewitness to the assault committed upon the victim, there was corroborating circumstantial evidence and reasonable inferences that defendant committed the assault upon her. The victim testified that defendant carried a weapon and that he struck her in the head causing her to bleed. In addition to her testimony identifying defendant as her assailant, the eyewitness observed the victim running around a black Mitsubishi[5] with a man, and the victim ducked down as the man leaned over the car. Although the eyewitness could not identify the man, she testified that the incident concerned her such that she drove back around to check on the victim. The eyewitness observed the man drive off in the Mitsubishi and found the victim to be bleeding and crying. She called 911 to report the injuries. Additionally, a police officer observed the victim's injuries. This evidence was sufficient to apprise the trier of fact that an assault with a weapon occurred upon the victim, she identified defendant as her assailant, and the eyewitness and police officer presented circumstantial evidence and reasonable inferences to support her testimony.

Although the victim testified that defendant drove off with her hand stuck in the window that caused her to fly up on the hood of the car, fall off the car, and be run over, the trial court did not find this testimony to be credible. However, the trial court was free to disbelieve this testimony that the victim was run over and, in fact, acquitted defendant of the charge pertaining to this testimony. *Goodchild*, 68 Mich App at 235. Yet, the trial court was free to convict defendant of

---

[5] When Holder testified at the *Ginther* hearing, he initially testified that he worked on defendant's vehicle which was a black Mitsubishi, not red as defendant asserted.

the remaining charges by finding that the victim's other testimony was credible. Under the circumstances, the trial court's verdict was not contrary to the great weight of the evidence.

## C. RESENTENCING

Defendant submits that he is entitled to resentencing where the trial court recalculated the sentencing guideline range, but imposed the same sentence without explanation. We agree and remand to the trial court for an articulation of the reasons for the sentence in light of the elimination of the OV scoring.[6]

Issues addressing the proper interpretation and application of the legislative sentencing guidelines, MCL 777.1 *et seq.*, present legal questions subject to review de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

At the initial sentencing hearing, the trial court scored OV 1 (aggravated use of weapon) at 15 points, OV 10 (predatory conduct) at 10 points and found that defendant's OV level was a 4, while his PRV level was at D. Defendant's minimum sentencing guidelines range was calculated at 14 to 43 months. After hearing from defendant and Holder, the trial court merely stated that defendant had been released from parole on March 3, 2017. The trial court then imposed a sentence of 2 to 10 years for felon in possession, five years for felony-firearm, 2 to 8 years for felonious assault, and credit for time served for the domestic violence conviction.

At resentencing, the trial court adopted defendant's arguments that OVs 1, 3 (injury to victim), and 10 should all be scored at zero. As a result, the minimum guideline range was now 5 to 34 months. The parties then disputed whether defendant received notice of his habitual offense, but both agreed that it was subject to a harmless error analysis unless our Supreme Court ruled to the contrary. Defense counsel argued that a reduction in the sentences should occur in light of the prior belief that his guideline range was 14 to 43 months, and therefore, a minimum 9-month reduction should occur. The prosecutor argued that defendant should not obtain a benefit because of the resentencing when the sentence was proportionate and within the guidelines in light of the serious conduct that occurred. The trial court imposed the same sentence:

> All right. The Court is going to, as to Count 1, felon in possession; the Court will sentence 2 to 10 years. That is within the guideline range. I believe that at the time that I sentenced I stated my reasoning.
>
> And I'm not gonna come back a year, more than a year later and re-remember my rationale that occurred at the time that I sentenced him. I think that

---

[6] We decline to address defendant's challenge to the presumption of proportionality in MCL 769.34(10) because the issue was not raised in the trial court.

I was correct at the time and I'm going to - - correct at the time. And I've taken into consideration the testimony that was heard and the circumstances and the guidelines.

And that I was within those guidelines. And I'm going to keep that sentence at 10 - - I'm sorry, for Count 1[,] 2 to 10 [years]. He will serve on Count 2, which is a felon in possession, a five-year flat. And Count 3, 2 to 8 [years]. He gets, on Count 5 he gets credit for time served. Which was the, I believe the misdemeanor.

In *People v Lockridge*, 498 Mich 358, 392-393; 870 NW2d 502 (2015), our Supreme Court addressed the application of the sentencing guidelines and held:

Accordingly, we sever MCL 769.34(2) to the extent that it is mandatory and strike down the requirement of a "substantial and compelling reason" to depart from the guidelines range in MCL 769.34(3). When a defendant's sentence is calculated using a guidelines minimum sentence range in which OVs have been scored on the basis of facts not admitted by the defendant or found beyond a reasonable doubt by the jury, the sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so. A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness. Resentencing will be required when a sentence is determined to be unreasonable. Because sentencing courts will hereafter not be bound by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court's discretion. *Sentencing courts must, however, continue to consult the applicable guidelines range and take it into account when imposing a sentence. Further, sentencing courts must justify the sentence imposed in order to facilitate appellate review.* [*Lockridge*, 498 Mich at 391-392 (Citation omitted, emphasis added).]

In *People v Conley*, 270 Mich App 301, 312-313; 715 NW2d 377 (2006), this Court addressed the reasons for imposition of a sentence:

A trial court must articulate its reasons for imposing a sentence on the record at the time of sentencing. "The purpose of the articulation requirement is to aid appellate review and avoid injustice on the basis of error at sentencing." The articulation requirement is satisfied if the trial court expressly relies on the sentencing guidelines in imposing the sentence or if it is clear from the context of the remarks preceding the sentence that the trial court relied on the sentencing guidelines. [Footnotes and Citations omitted.]

We conclude that defendant is entitled to a remand. The trial court failed to articulate any rationale for imposing the first sentence. However, when resentencing occurred, the trial court could not recall its initial rationale, but stated that it would rely on that reasoning because it found that it was correct at the time. Thus, the trial court did not indicate that it was relying on the sentencing guidelines at the first sentence or proffer any other reason for the sentence imposed. Because the trial court did not articulate reasons for imposing the second sentence despite the reduction of the

guidelines after removing the OV scores, we remand for an articulation of the reasons for imposing the sentence.

## D. HABITUAL OFFENDER NOTICE – SERVICE

Defendant alleges that he cannot be sentenced as an habitual offender because the prosecutor failed to comply with the notice requirements. We disagree.

This issue presents a question of law for which de novo review applies. *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018). Although there is no evidence of a proof of service in the lower court record, this issue is subject to harmless error analysis. *Id*. at 543-545. Because there is no indication that defendant was prejudiced by the alleged failure to receive the proof of service and was on notice of the intent to seek the enhancement, he is not entitled to appellate relief.

In the present case, the information was filed on May 30, 2017, and the information contained the habitual third-offender notice. Additionally, there was a probable cause conference at which defendant requested to proceed to a preliminary examination. There is no indication that defendant did not receive the notice of the habitual offender as required by MCR 6.113(B). Furthermore, at the calendar conference on July 28, 2017, the parties discussed the offer of a plea to defendant that he rejected. Thus, under the circumstances, the failure to file a proof of service of notice of the habitual constituted harmless error when it was delineated in the information.

## III. STANDARD FOUR BRIEF

## A. JUDICIAL BIAS

In his standard four brief, defendant contends that he was denied a fair trial by judicial bias. We disagree.

This claim of error is unpreserved because defendant did not raise it in the trial court. An unpreserved claim of judicial bias is reviewed for plain error affecting defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

A defendant is entitled to a neutral and detached magistrate, and his claim of judicial bias must overcome a heavy presumption of judicial impartiality. *People v Johnson*, 315 Mich App 163, 195-196; 889 NW2d 513 (2016). The party seeking disqualification bears the burden of proving actual bias or prejudice. *People v Houston*, 179 Mich App 753, 756; 446 NW2d 543 (1989).

> Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments "were of such a nature as to unduly influence the jury and thereby deprive the appellate of his right to a fair and impartial trial." [*People v Collier*, 168 Mich App 687, 698; 425 NW2d 118 (1988).]

-10-

This case was tried before a judge, not a jury. "Unlike a jury, a judge is presumed to possess an understanding of the law, which allows him to understand the difference between admissible and inadmissible evidence or statements of counsel." *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992). Additionally, a judge's rulings and opinions formed during trial are not valid grounds for raising a claim of bias unless there is a deep-seated favoritism or antagonism making the exercise of fair judgment impossible. *Jackson*, 292 Mich App at 598. "Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality." *Id.*

A review of the defendant's claim of error reveals that he takes issue with the trial judge's rulings admitting evidence that he contends constituted hearsay as well as her assessment of the credibility of the witnesses. Because this was a bench trial and it is presumed that the trial court understands the difference between admissible and inadmissible evidence, the admission of hearsay did not support a claim of judicial bias. The rationale being that the court may allow inadmissible evidence, but generally does not consider it when rendering a finding of guilt or innocence.

Additionally, defendant asserted that the trial court violated MRE 614, the rule governing the trial court calling and interrogating witnesses, by leading the witnesses to give specific answers. MRE 614(b) allows the court to interrogate witness whether called by itself or a party, and MRE 614(c) allows a party to object to the court's action in calling witnesses. Defendant, as the moving party, did not meet his burden of proving judicial bias or prejudice. *Houston*, 179 Mich App at 756. The victim gave scattered testimony. Initially, she seemingly testified that defendant struck her with the pistol before he took off in the car dragging her alongside the car and then on its hood. However, she then indicated that the pistol whipping occurred after the car dragging incident, but then claimed that she always testified that the pistol whipping transpired before any car dragging. In our review, the trial court did not question the victim with the intent to obtain specific answers, but rather sought clarification of her testimony. Further, the record does not support defendant's allegation that the trial court was biased against him and favored the victim. The trial court considered each charge and the supporting evidence individually. Thus, the trial court acquitted defendant of the assault charge involving the motor vehicle, concluding that the victim's testimony that she became trapped in the window of the vehicle, was thrown to the hood of the car during defendant's flight, then fell off in the construction zone and was run over, was not credible.

Because defendant did not raise the issue of judicial bias in the trial court, this issue is reviewed for plain error affecting his substantial rights. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Lockridge*, 498 Mich at 392-393. The requirement that the error was plain generally requires a showing a prejudice such that the error affected the outcome of the lower court proceedings. *Id.* Even if the plain error criteria are satisfied, the appellate court must exercise discretion in determining if reversal is warranted. *Id.* "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Id.* He did not meet this burden. The trial court's decision to admit evidence did not equate with consideration of that evidence in this bench trial, and the trial court's rulings and decision did not demonstrate favoritism or bias.

Rather, the trial court evaluated each charge individually and did not find that all of the victim's testimony was credible. This claim of error does not entitle defendant to appellate relief. Defendant failed to establish that he was denied a neutral and detached magistrate or plain error affecting his substantial rights.

## B. PROSECUTORIAL MISCONDUCT

Defendant submits that he was denied a fair trial in light of the cumulative effects of the prosecutor's improper comments and questions. We disagree.

When prosecutorial statements are not challenged with contemporaneous objections and requests for curative instructions, this Court reviews the issue for plain error affecting the defendant's substantial rights. *Solloway*, 316 Mich App at 201-202. Defendant failed to show plain error affecting his substantial rights.

Prosecutorial misconduct[7] issues are evaluated on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). To obtain relief for a claim of prosecutorial misconduct, a defendant must demonstrate that he was denied a fair trial. *People v Bosca*, 310 Mich App 1, 26; 871 NW2d 307 (2015). When a claim of misconduct is premised on a prosecutor's statements, the remarks must be examined in context to determine if the defendant was denied a fair and impartial trial. *Mullins*, 322 Mich App at 172. The statements must be assessed in light of the defense arguments and the relationship between the comments and the evidence presented at trial. *Id.* With regard to argument, the prosecutor has great latitude and is free to argue the evidence and all reasonable inferences arising from the evidence as it relates to the theory of the case. *Id.* A claim of prosecutorial misconduct cannot be premised on a good-faith effort to admit evidence because the prosecutor may seek to introduce evidence that he legitimately believes will be admitted by the court. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999).

"It is elementary that a leading question is one that suggests an answer." *Woods v Lecureux*, 110 F3d 1215, 1221 (CA 6, 1997); see also *Stoudt v Shepherd*, 73 Mich 588, 592; 41 NW 696 (1889) ("[N]o question is leading which does not suggest an answer[.]"). MRE 611(d)(1) provides that leading questions should not generally be used on direct examination "except as may be necessary to develop the witness' testimony." To warrant reversal premised on the prosecutor's use of leading questions, prejudice must be shown or a pattern of elicitation of inadmissible testimony. *People v Johnson*, 315 Mich App 163, 199-200; 889 NW2d 513 (2016).

We conclude that defendant's claim of error is not supported by the record. Although he contends that the prosecutor asked leading questions and generally cited to pages from the

---

[7] Although defendant characterizes the prosecutor's questions and statements as misconduct, this Court recently explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," because only the most extreme and rare cases rise to the level of "prosecutorial misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). However, this writer will use the phrase "prosecutorial misconduct" because it has become a term of art in criminal appeals. *Id.*

transcript of the victim's testimony, a review of that questioning does not indicate that the prosecutor asked questions that suggested an answer. Rather, those pages focused on the assault in the car, the push out of the car, the couple's fight and struggle on the lawn, the victim's attempt to get help from a resident to no avail, and defendant driving off in the car with the victim stuck in the window. The prosecutor did not ask leading questions, but asked clarifying or directed questions in an attempt to get the victim to focus on a topic or stay on point. Therefore, the prosecutor asked questions such as how the victim got out of the car and what happened next. The pages cited by defendant do not support the contention that improper leading questions were asked.

Additionally, defendant seemingly argued that the prosecutor committed misconduct by arguing facts not in evidence when claiming that the eyewitness indicated that defendant had something shiny in his hand and by improperly providing expert testimony by delineating the victim's injuries. As noted, the prosecutor may argue the evidence and reasonable inferences arising from the evidence. Although the eyewitness did not testify that defendant had a gun, she apparently gave a statement to the police indicating that she saw something shiny. The prosecutor noted that the victim testified that she was pistol-whipped by defendant and the eyewitness saw defendant reaching over the hood of the car and the victim ducked. Thus, the prosecutor submitted that the court, as the trier of fact, could infer that the victim ducked from having a weapon pointed at her. Additionally, the victim testified regarding the assault by defendant, being taken by ambulance to the hospital, her injuries, and her treatment and receipt of stitches. The prosecutor did not improperly present testimony as a medical expert. Rather, he presented a summation of the victim's testimony to the court, arguing the evidence admitted and reasonable inferences arising therefrom. *Mullins*, 322 Mich App at 172. The record demonstrates that the prosecutor argued his view of the evidence and did not purport to act as an expert. Moreover, the case was tried to the bench, not a jury, and the court presided over the evidence and knew the role of the prosecutor and the limitations placed on argument as opposed to admissible evidence. Thus, defendant did not demonstrate prosecutorial misconduct under the circumstances, and plain error affecting his substantial rights.

## C. DISCOVERY VIOLATION

Defendant also contends that the prosecutor failed to disclose police reports or preliminary complaint reports (PCR), and this omission denied him of due process. We disagree.

The Court of Appeals reviews a trial court's decision regarding a discovery violation for an abuse of discretion. *Bosca*, 310 Mich App at 26. Because defendant did not raise this issue in the trial court, our review is for plain error affecting defendant's substantial rights. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). However, there is no indication that the prosecutor failed to provide discovery, and therefore, defendant failed to demonstrate plain error affecting his substantial rights.

Pursuant to MCR 6.201(A)(6), the parties have an obligation to make mandatory disclosures of tangible physical evidence including reports. The issue of police reports arose during the questioning of the eyewitness. During her examination, she could not identify anything in defendant's hand at the time he was running around the car with the victim as she was ducking. Although the eyewitness did not give a formal statement to the police, apparently in a PCR, the police indicated that the eyewitness saw something in defendant's hand. Consequently, the

prosecutor tried on two occasions to question the eyewitness about the report, and defense counsel objected on both occasions. On the first occasion, the trial court sustained the objection, and on the second attempt, the prosecutor withdrew the request.

Although defendant contends that a discovery violation occurred, the record reflects that defense counsel had received the report because he was aware of its contents. Specifically, when the prosecutor sought to approach the eyewitness with the report, defense counsel knew that the report did not contain her statement. Defense counsel stated that, at most, the prosecutor could call the officer that prepared the report and present impeachment evidence. Thus, it is apparent from the objection and discussion that defense counsel was aware of the report and its contents. Thus, the record does not reflect that a discovery violation occurred.

More importantly, defense counsel prevented the prosecutor from questioning the eyewitness about the report and its contents. The prosecutor wanted to attempt to refresh the eyewitness's recollection that she told the police that defendant either had something in his hand or something shiny, such as a gun, in his hand. Thus, defense counsel's objections successfully prevented admission of evidence by the eyewitness that defendant had something, perhaps a gun, in his hand. Defendant failed to demonstrate that an error occurred under the circumstances.

## D. SUFFICIENCY OF THE EVIDENCE

Defendant also asserts that there was insufficient evidence that he possessed a weapon to support his convictions. We disagree.

A defendant need not take any special steps to preserve a challenge to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). A challenge to the sufficiency of the evidence is reviewed de novo. *People v Thorne*, 322 Mich App 340, 344; 912 NW2d 560 (2017). "The evidence in a bench trial is sufficient if, when viewed in the light most favorable to the prosecutor, a rational factfinder could determine that each element of the crime had been proved beyond a reasonable doubt." *Hawkins*, 245 Mich App at 457.

To support defendant's felony convictions, each offense required the element of possession of a weapon. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (Citation omitted). Pursuant to MCL 750.224f, the felon in possession statute, a defendant shall not possess a firearm until a series of requirements are fulfilled. *People v Dupree*, 486 Mich 693, 705; 788 NW2d 399 (2010). The elements of felonious assault are that a defendant must commit an assault, with a dangerous weapon, and intend to injure or place a victim in reasonable apprehension of an immediate battery. *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013). The element of possession presents a question for the trier of fact and may be proved by circumstantial evidence and reasonable inferences arising from the evidence. *People v Strickland*, 293 Mich App 393, 401; 810 NW2d 660 (2011). Witness credibility presents a question for the fact-finder, and this Court will not interfere with the fact-finder's role. *Solloway*, 316 Mich App at 181-182.

With regard to the convictions, defendant only challenges the possession of a weapon requirement for all of the offenses. Defendant contends that the eyewitness did not identify him

or place him with a weapon, and he denied possession of a weapon during his testimony. Finally, he alleges that the victim was not credible because she was angry with defendant for failing to support her. However, defendant's challenge is contingent on the assessment of credibility, specifically, whether the trier of fact believed defendant's testimony that he did not possess a weapon and was with his father, not the victim, on the day in question or believed the victim's testimony that defendant possessed a weapon and assaulted her with it.

Although defendant contends that the victim was not credible, the eyewitness testified that she saw a man, that the victim identified as defendant, and the victim running around a car. She further testified that defendant leaned over the car and the victim ducked. These observations caused the eyewitness to drive back to the area to check on the victim. On the second occasion, she found the victim bloody and crying. She put the victim in her car, called 911, and waited for the police and an ambulance to arrive. Additionally, the victim testified that defendant became angry with her, drew his gun, and pistol whipped her on the eyebrow. Finally, the responding police officer also observed dried blood on the victim.

Therefore, the trial court was presented with the victim's testimony that she was assaulted with defendant's weapon, and there was circumstantial evidence and reasonable inferences offered by the eyewitness and a police officer to corroborate the assault. Because the credibility of this testimony presented a question for the trier of fact, and the trial judge in this bench trial found that the testimony credible that defendant possessed and used a weapon to assault the victim, this Court will not interfere with the trier of fact's role on this issue. There was sufficient evidence to support the possession of a weapon element of the convicted offenses.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant contends that trial counsel was ineffective for failing to adequately question witnesses, failing to object to prosecutorial misconduct, failing to object to judicial bias, and failing to investigate. We disagree.

First, defendant contends that his trial counsel's cross-examination of the eyewitness was deficient because he failed to impeach her with the police reports and failed to demonstrate her dishonesty. Defendant seemingly protests the fact that defense counsel objected to the prosecutor approaching the eyewitness with the PCR and for failing to question her about statements to the 911 operator because it constituted impeachment evidence and exposed her dishonesty. However, decisions regarding what evidence to present and witnesses to call are deemed matters of trial strategy. *Dunigan*, 299 Mich App at 589-590. Apparently, the police report contained information that the eyewitness saw that defendant either had something shiny in his hand or a weapon. Thus, the prosecutor attempted on two occasions to elicit this information. Although defendant contends that his counsel should have used the PCR for impeachment, he fails to delineate any content of the PCR that would have been impeachment evidence. Moreover, it appears that his trial counsel's strategy was far more efficient than any impeachment evidence. Defense counsel's objection to the PCR prevented the prosecutor from obtaining corroborating evidence from the eyewitness that defendant held a shiny object, perhaps even a weapon, evidence that would confirm the victim's testimony.

-15-

Further, defendant contends that his trial counsel was ineffective for failing to cross-examine the eyewitness about the 911 call and demonstrate her dishonesty. After the 911 call was played during the trial, the prosecutor inquired if the content of the call was true. Apparently, the eyewitness mentioned to the 911 operator that the victim was pistol-whipped. The eyewitness clarified that she did not personally observe that the victim was pistol-whipped. While defendant contends that defense counsel should have further explored this "dishonesty," he fails to identify specific information from the record that would have challenged the credibility of the eyewitness. This claim of error does not provide defendant with appellate relief.

Next, defendant alleged that trial counsel was ineffective for failing to object to instances of prosecutorial misconduct that included arguing facts not in evidence pertaining to a shiny object in defendant's hands, his citation to the victim's medical injuries when her records were not admitted, and by asking leading questions of the victim.

As discussed above, we concluded that the prosecutor did not engage in misconduct. Furthermore, a defense attorney need not advance a meritless argument or raise a futile objection. *Ericksen*, 288 Mich App at 201. The case was tried to the bench, not a jury. "In a bench trial, the trial court is presumed to know the applicable law." *People v Lanzo Constr Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006). Accordingly, the trial judge knew the import of the prosecutor's argument regarding the eyewitness testimony of the victim's injuries. The trial court presumably knew that it had to rely on the substantively admissible evidence and that the arguments by the prosecutor were simply argument.

Defendant also asserts counsel was ineffective for failing to object to the trial court's improper questioning of the witnesses and its direction to the victim on how to answer the questions. "It is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty." *People v Biddles*, 316 Mich App 148, 153; 896 NW2d 461 (2016). The rules of evidence allow a trial court to question witnesses.

MRE 611. Mode and Order of Interrogation and Presentation

(a) *Control by court*. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

* * *

MRE 614. Calling and Interrogation of Witnesses by Court

(a) *Calling by court*. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

(b) *Interrogation by court*. The court may interrogate witnesses, whether called by itself or by a party.

(c) *Objections*. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

The trial court may question witnesses to clarify the testimony or to extract additional relevant information. *People v Davis*, 216 Mich App 47, 50-51; 549 NW2d 1 (1996). The trial court must ensure that its questioning is not intimidating, argumentative, prejudicial, unfair, or partial. *People v Conyers*, 194 Mich App 395, 405; 487 NW2d 787 (1992). Additionally, the trial court must ensure that it does not assume the role of the prosecutor. *Davis*, 216 Mich App at 51. The test to determine whether the trial court's questioning deprived the defendant of a fair trial is whether the questioning and comments unjustifiably raised juror suspicion regarding witness credibility and possibly influenced the jury to the detriment of the defendant's case. *Conyers*, 194 Mich App at 405. However, in this case, because there was no jury, there was no issue regarding juror suspicion or influence by the trial court questioning.

A review of the transcript reveals that the trial court questioned the victim when issues needed clarification. Consequently, when the victim alleged that her hand became stuck in the window of defendant's car and she was dragged and thrown to the hood, the trial court questioned how it occurred and where each hand was placed. Additionally, when questioned about whether there was any change to the car window when the victim's hand was stuck, she answered that she thought the window was made of glass. The trial court then instructed the prosecutor to direct her to answer the question, not give a narrative. After the parties completed their examination of the victim, the trial court asked her a question to which her answer was non-responsive. The trial court stated, "No, no, that's not what I asked you. You have to be real careful. Answer my questions only." Although defendant contends that the trial court instructed the victim on how to answer the questions, the trial court did not direct her to answer the questions in a specific way, but instructed her to respond to the question posed. Defendant's contention that the trial court acted in an improper manner by questioning the witnesses is not substantiated by a review of the transcript.

Finally, defendant contends that trial counsel was ineffective for failing to investigate. Specifically, he claims that trial counsel failed to investigate where the incident purportedly occurred because the streets identified by the victim did not intersect. Additionally, the victim claimed that the couple partied with her family and friends the night before the assault, but no witnesses were called to verify her assertion. Again, decisions regarding what evidence to present and the witnesses to call presents a matter of trial strategy, and this Court will not second-guess strategic decisions with the benefit of hindsight. *Dunigan*, 299 Mich App at 589-590. The decision to permit impeachment of a witness regarding a collateral matter presents an issue within the discretion of the trial court. *People v Wofford*, 196 Mich App 275, 281; 492 NW2d 747 (1992). Generally, a witness may not be impeached regarding collateral, irrelevant, or immaterial matters. *People v Vasher*, 449 Mich 494, 504; 537 NW2d 168 (1995).

The fact that Mansfield and Chalfonte Streets may not intersect does not demonstrate that trial counsel failed to investigate. Rather, counsel may have concluded that this point was a collateral matter that did not warrant exploration and was not impeachable in light of the rules limiting impeachment to relevant matters. Additionally, defendant questions his trial counsel's failure to call the family and friends of the victim that purportedly partied with the couple the night before the assault. Again, even if witnesses testified that the victim and defendant were seen

together on April 22, 2017, at a party, the testimony had no bearing on whether defendant assaulted the victim on April 23, 2017. These issues that defendant contends should have been raised were collateral. Accordingly, defendant failed to meet his burden of demonstrating that counsel was ineffective.

Affirmed, but remanded for articulation for the reasons for the sentencing, and if deemed necessary, resentencing. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto